UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
WADE BANNER,

                      Plaintiff,                    05 Civ. 10838 (PKC)

        -against-

                                           MEMORANDUM
MICHAEL J. ASTRUE,                      AND
Commissioner of Social Security           ORDER

                      Defendant.

-----------------------------------------------------------------x

P. KEVIN CASTEL, U.S.D.J.

           Plaintiff Wade Banner seeks judicial review of a final decision by the

Commissioner of Social Security (the "Commissioner") denying his application for disability

insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 et seq. (2007)

(the "Act").[1]  Plaintiff asserts that the decision of the Administrative Law Judge ("ALJ") was

"erroneous and unfounded," "not supported by substantial evidence," and "contrary to the law."

(Compl. ¶ 19-20)  Both parties have moved for judgment on the pleadings pursuant to Rule

12(c), Fed. R. Civ. P.  For the reasons set forth below, plaintiff's motion is denied and the

Commissioner's cross-motion is granted.

I.        PROCEDURAL HISTORY

           On July 21, 1995, plaintiff applied to the Social Security Administration ("SSA")

for disability insurance benefits due to complications from diabetes. (R. 103)[2] Plaintiff sought

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, who succeeded Jo Anne B. Barnhart as the Commissioner
of social security on February 12, 2007, is substituted as the named defendant.
[2] Citations to "(R. ___ )" refer to the certified copy of the administrative record of proceedings filed by the
Commissioner as part of her answer.  (Docket Nos. 5, 6 )

benefits for a five-year period, beginning February 2, 1990, the date plaintiff stopped working

(R. 103), until March 31, 1995, the date plaintiff was last insured for such benefits. (R. 128)

The SSA determined that plaintiff's condition was not severe enough to have kept

him from working during the five-year insured period, and denied his application on October 16,

1995. (R. 110)  Plaintiff requested reconsideration of the SSA's determination, which was also

denied on April 13, 1996. (R. 123)  Plaintiff then requested a hearing to appeal the SSA's denial

of disability benefits, which was held before ALJ Allan T. O'Sullivan on April 30, 1997 (the

"Initial Hearing"). (R. 32)  Plaintiff was represented by counsel at the hearing. (R. 34)  ALJ

O'Sullivan issued a written decision on August 27, 1997, finding that plaintiff was not entitled to

disability insurance benefits as he was not disabled within the meaning of the Act. (R. 262-68)

Following the ALJ's final denial, plaintiff sought review of the decision by the

Office of Hearings and Appeals' Appeals Council, the request for which was granted by order

dated September 15, 1999.  The Appeals Council vacated ALJ O'Sullivan's decision and

remanded the matter, directing the ALJ to resolve evidentiary issues, obtain evidence from a

medical expert to "clarify the nature and severity" of plaintiff's impairment and further develop

evidence concerning plaintiff's maximum residual functional capacity. (R. 280-81)  A second

hearing was held on April 26, 2000 before ALJ O'Sullivan. (R. 56)  The ALJ issued a second

written decision on May 26, 2000, again concluding that plaintiff was not entitled to disability

insurance benefits because plaintiff was not "disabled" as that term is defined in the Act, and

because he had a residual functional capacity ("RFC") for medium work.[3] (R. 453-54)

Plaintiff again requested review by the Appeals Council of the unfavorable

decision, which was granted by order dated November 28, 2003.  The Appeals Council again

_____

[3] RFC is the level of activity possible despite limitations caused by an impairment.  20 C.F.R. § 404.1545.  "Medium work" is defined in 20 C.F.R. § 404.1567(c) as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

vacated ALJ O'Sullivan's decision and remanded the matter to resolve inconsistencies between the RFC ascribed to plaintiff by the ALJ and the evidence in the record. (R. 380)  The Appeals Council directed that a new ALJ hear the matter on remand. (R. 381)  A third hearing was held before ALJ Kenneth L. Scheer, who heard the matter de novo on February 17, 2005. (R. 66)  ALJ Scheer issued a written decision on March 23, 2005, determining that plaintiff had a RFC for light work[4] during the five-year insured period and was not disabled at any time since February 2, 1990. (R. 30-31)  ALJ Scheer thus concluded that plaintiff was not entitled to disability insurance benefits. (R. 31)  Plaintiff again requested review of the ALJ's decision by the Appeals Council. (R. 9, 18)  The Appeals Council denied the request, and ALJ Scheer's opinion became the final decision of the Commissioner on March 29, 2005. (R. 6)

On December 27, 2005, plaintiff filed a timely complaint in this District seeking review of ALJ Scheer's decision.[5]  (Docket No. 1)

## II.   EVIDENCE BEFORE THE ALJ

Plaintiff, represented by counsel, testified at the hearing before ALJ Scheer held on February 17, 2005.  Plaintiff testified as to his background, work history, difficulty seeing and hearing as well as his numerous visits to doctors.  In addition to plaintiff's testimony, the ALJ heard testimony from Dr. Gerald Golst, a physician on the panel of medical experts maintain by the SSA's Office of Hearing and Appeals. (R. 83)  Dr. Golst testified based on his review of plaintiff's medical file and responded to questioning from both plaintiff's attorney and the ALJ. In rendering a decision, the ALJ considered not just the testimony at the hearing held before him

---

[4] "Light work" is defined in 20 C.F.R. § 404.1567(b) as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."

[5] The Act provides that a civil action must be filed within 60 days from the date a claimant receives notice of the Appeals Council decision.  42 U.S.C. § 405(g); 20 C.F.R. § 422.210(c).  The date of receipt is presumed to be 5 days after the date of the Appeals Council decision.  20 C.F.R. § 422.210(c).

but also the documents submitted as exhibits which included evidence from plaintiff's prior hearings before ALJ O'Sullivan.

    A.    <u>Non-Medical Evidence</u>

    Plaintiff was born in New York, New York on July 16, 1936.[6] (R. 36, 71)  He completed high school and had no additional vocational training. (R. 37, 72)  He served in the United States Air Force as a fire protection specialist from May 1957 until September 1960 and was honorably discharged. (R. 71-72, 422)

    Plaintiff's past employment includes positions as a library assistant for a conference board, an "office helper" for an advertising agency, and a mail clerk and copy machine operator at Planned Parenthood. (R. 73-75, 208)  At the Initial Hearing, plaintiff testified that he was terminated from his most recent employment at Planned Parenthood in February 1990. (R. 38)  He also stated that his condition affected his ability to work at Planned Parenthood in that he had difficulty performing his job and he missed days of work because he did not feel well. (R. 49-50)  At the hearing before ALJ Scheer, plaintiff testified that he stopped working in 1990 because "[he] couldn't handle it anymore . . . the work got too much for [him] . . . physically and mentally." (R. 75)  Plaintiff claims to be disabled and therefore unable to work as of February 2, 1990. (R. 103)

    At the Initial Hearing, plaintiff testified that aching pain in his back and legs prevented him from working. (R. 39-41)  Plaintiff also stated that he got dizzy on the job. (R. 39)  He took Glucotrol to stabilize his sugar, but that he began taking insulin after it was ineffective. (R. 42)  He also took Tylenol or aspirin for pain in his back and legs, and stated that the medication helped him. (R. 42-43)  Additionally, plaintiff testified that he could walk about half

---

[6] Plaintiff was 53 years old in February 1990, the time he stopped working.  He was 58 years old on the date he was last insured for disability benefits.

a block until his legs hurt, stand for at most twenty minutes, and lift and carry about five or ten pounds. (R. 43-44)  Plaintiff also reported that he smoked about one pack of cigarettes every two days and does not use alcohol or drugs. (R. 46)

At the hearing before ALJ Scheer, plaintiff stated that during the five-year period at issue he had experienced physical problems from his diabetes, including pain in his legs when he walked, dizziness as a result of not properly taking care of his diabetes, and irritability after sitting for about fifteen or twenty minutes. (R. 77, 80)  He also stated that he had problems carrying things. (R. 81)  Plaintiff also testified that he had vision problems from 1990 to 1995, and later discovered that he had glaucoma. (R. 81)  Additionally, he had atrophy in one eye. (R. 82)  Finally, plaintiff reported that he had hearing problems during the five-year period and could not hear people at work until he was told the same thing twice. (R. 82)

Plaintiff lives in an apartment with his wife. (R. 71)  The social security benefits that his wife receives for her Parkinson's Disease was their sole source of income after plaintiff stopped working. (R. 79)  During the five-year period at issue, his wife mostly did the household chores, and plaintiff did the shopping and cooking some of the time. (R. 46, 79)

Plaintiff testified that he did not drive an automobile and that he took public transportation but could rarely travel alone. (R. 37)  Plaintiff also testified that he spent most of his time at home, where he watched television, read magazines and books, and did things around the house for his wife. (R. 45, 47)  He went to the park about once a week and to the doctor at least once a month, although he "can't make a steady walk" to his doctor's office. (R. 42, 45)  He also attended his church, located a block and a half from his home, for prayer service on Friday nights and regular Sunday service. (R. 45-46)

5

B.      Medical Evidence During the Insured Period

Plaintiff was diagnosed with diabetes mellitus around 1987. (R. 144)  He asserts that from 1990 to 1995, the relevant insured period, he was disabled under the Act.  He contends that he suffered from listed disability 9.08A: "diabetes mellitus with neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station."  20 C.F.R. pt. 404, subpt. P, app. 1, § 9.08A.

In August 1990, plaintiff visited Dr. Josef Machac at Mount Sinai Medical Center in order to investigate chest pain plaintiff experienced while pursuing an exercise program with a different physician. (R. 144)  Dr. Machac determined that plaintiff's chest pain was associated with bronchitic cough, but that plaintiff was otherwise "asymptomatic with no angina on exertion and no history of dyspnea or edema." (R. 144)  Results from the physical examination showed that plaintiff had a regular heart rate, his blood pressure was normal, and his right eye turned outward but he had "nearly normal visual acuity" in both eyes. (R. 144-45)  Additionally, Dr. Machac reported that plaintiff's heart exam was "notable for a borderline displaced PMI [(point of maximal impulse)] but with no murmur" and his "lower extremities showed good pulses with no bruits." (R. 144-45)

Dr. Machac reported laboratory findings, including an electrocardiogram ("ECG") which showed "normal sinus rhythm with normal morphology," and a chest X-ray that showed "a normal heart size, no pulmonary infiltrates or fluid." (R. 145)  Dr. Machac also recommended that plaintiff get an ECG stress test. (R. 145)  Plaintiff exercised for six minutes on a regular Bruce protocol to 91% of his maximum predicted heart rate, which was limited by hypertension.

(R. 145)[7]  Dr. Machac opined that the ECG results showed no significant coronary artery disease and cleared plaintiff for exercise without restriction. (R. 145)  Dr. Machac also thought that the hypertension during the ECG was stress-related, but suggested that plaintiff be "serially checked for intermittent hypertension."

Plaintiff began seeing Dr. Hemant Patel on June 3, 1992. (R. 160)  Dr. Patel's physical examination of plaintiff revealed a clear chest, a normal cardiac exam, and extremities within normal limits. (R. 161)  Dr. Patel's initial impression was that plaintiff had uncontrolled diabetes, and he prescribed plaintiff Glucotrol. (R. 161)  During the course of plaintiff's treatment, Dr. Patel found that plaintiff's blood sugar remained high and changed his treatment to insulin, which resulted in plaintiff's blood sugar reaching normal levels. (R. 161)

Dr. Patel stated that he regularly saw plaintiff, about once every week in 1992, and followed him actively to control his blood sugar. (R. 161)  On September 14, 1992, plaintiff underwent an arterial Doppler study, which Dr. Patel opined was "essentially normal, with some evidence of ischemia or peripheral vascular disease." (R. 161)  In July 1994, Dr. Patel stated that he saw plaintiff about once every four weeks.  At that time, Dr. Patel's treating diagnosis of plaintiff was diabetes mellitus with diabetic retinopathy, mild hypertension, and benign prostatic hypertrophy.

Dr. Frank E. Accardi, an ophthalmologist, examined plaintiff on July 26, 1994. (R. 159)  Dr. Accardi noted that plaintiff had "excellent visual acuity with the appropriate spectacle correction," no glaucoma, right exotropia, and "minimal background diabetic retinopathy which needs no therapy." (R. 159)

---

[7] The "Bruce protocol" is a standardized multistage treadmill test for assessing cardiovascular health. See Tart v. McGann, 697 F.2d 75, 77 (2d Cir. 1982).

C.    <u>Medical Evidence After the Insured Period</u>

Dr. Steven Rocker, a consulting internist of Diagnostic Health Services, Inc., examined plaintiff on October 3, 1995. (R. 163-64)  Dr. Rocker reported that plaintiff complained of "chronic stinging sensation on the soles of both feet" and "bilateral calf pain." (R. 163)  He found that plaintiff has a history of diabetes mellitus and "probable early peripheral neuropathy."  It was Dr. Rocker's opinion that plaintiff's ability to perform work-related activities was limited by "some difficulty with activity requiring prolonged repetitive dexterity of lower extremities." (R. 164)

Dr. Patel continued to treat plaintiff after 1995.  He wrote a letter dated March 17, 1997, stating that, as of that point, plaintiff had suffered from diabetes mellitus for a few years, diabetic neuropathy for one and a half years, hypertension, vertigo, and lumbar radiculopathy. (R. 207)  Dr. Patel wrote another letter, addressed "To Whom it May Concern," on March 30, 1997, in which he stated that plaintiff "has been disabled and unable to work since Feb. 1990." (R. 179)

On April 21, 1997, Dr. Patel completed a RFC form for plaintiff where he indicated that in an eight-hour day, plaintiff could sit for four hours and stand and walk for one hour. (R. 210)  Dr. Patel thought that plaintiff could occasionally lift ten pounds, carry five pounds, and occasionally bend, climb steps, and reach. (R. 210)  He also stated that plaintiff's condition caused pain and plaintiff had difficulty with low levels of stress. (R. 211)  Additionally, Dr. Patel indicated that plaintiff's prescribed medications caused drowsiness and nausea. (R. 211)

Plaintiff was also under the care of Dr. Pradip Joshi, a podiatrist.  On April 30, 1997, Dr. Joshi wrote a note that he treated plaintiff for diabetes mellitus, peripheral vascular disease, and advised for orthotics for both feet. (R. 213)

Dr. Rocker examined plaintiff for a second time on May 27, 1997. (R. 214-16) Dr. Rocker reported that plaintiff's blood pressure was 180/100, station and gait were normal, and peripheral pulsations in the extremities were intact. (R. 215)  ECG results showed a normal sinus rhythm. (R. 215)  Dr. Rocker's diagnosis for plaintiff was diabetes mellitus, hypertension, arthralgia of the low back and feet, no objective musculoskeletal impairment, and restrictive pulmonary deficit. (R. 216)  Dr. Rocker indicated that plaintiff was able to perform sedentary, light and most moderate work activity. (R. 216)

On March 12, 1998, Dr. Patel completed another RFC form for plaintiff, which varied slightly from his findings on the previous RFC form. (R. 274-77)  Dr. Patel indicated that in an eight-hour workday, plaintiff could sit for four hours and stand/walk for three hours. (R. 275)  Dr. Patel also reported that plaintiff could lift/carry up to ten pounds, and could use both hands for grasping and fine manipulations. (R. 275)

Dr. Herbert M. Lachman, an SSA consultative internist, examined plaintiff on November 10, 1999. (R. 287-89)  Dr. Lachman diagnosed plaintiff with poorly controlled diabetes, intermittent claudication, controlled hypertension, and reduced visual acuity in the right eye. (R. 289)  It was Dr. Lachman's opinion that plaintiff would be unable to walk for long periods of time as a result of the intermittent claudication, and the condition also restricted his ability to travel. (R. 289)  Dr. Lachman reported that plaintiff was able to sit and use his hands and fingers. (R. 289)  He also suggested that plaintiff's symptoms may improve with better dietary compliance and reduced cigarette smoking. (R. 289)

Plaintiff sought medical care at the VA Medical Center in the Bronx, New York from September 2001 through November 2003. (R. 409-37)  Plaintiff underwent a renal ultrasound on September 11, 2001, which showed a small stone in the left kidney. (R. 409) Notes from a July 19, 2002 visit indicate that plaintiff's diabetes was fairly controlled and his blood pressure was 167/92, which the physician considered to be high. (R. 428)  The physician also diagnosed diabetic nephropathy. (R. 429)  Notes from an April 8, 2003 visit show that plaintiff underwent a diabetic retinal exam, which showed moderate background retinopathy and vision at 20/50 and 20/40. (R. 418)  The most recent note from the VA Medical Center is from November 17, 2003. (R. 411-14)  The physician indicated that plaintiff had type II diabetes mellitus for more than fifteen years, hypertension, and positive microalbuminuria. (R. 411)

Dr. Patel prepared a Consultation Report after his most recent examination of plaintiff on October 12, 2004, which echoed his previous diagnoses of plaintiff. (R. 404)  Dr. Patel reported blood pressure at 140/80 which he stated was optimal and stable. (R. 404)  He also diagnosed plaintiff with type II diabetes, diabetic neuropathy, peripheral vascular disease, abnormal PSA with status post negative biopsy, hypertension, impaired hearing due to age related changes and sensory neuronal hearing loss, lumbar radiculopathy, and chronic renal failure. (R. 404)  It was Dr. Patel's opinion that plaintiff's "symptoms are significant enough to impair his functional capacity" and his pain was "moderate to severe." (R. 404)

Dr. Galst, the SSA physician who appeared at the hearing before ALJ Scheer, testified that during the five-year insured period plaintiff had diabetes, complaints about his legs, and visual problems. (R. 84-85)  Dr. Galst pointed out what he believed to be a contradiction in Dr. Patel's diagnosis of arterial insufficiency, that is, that Dr. Patel's diagnosis of ischemic or vascular disease is inconsistent with the normal Doppler results. (R. 86)  Dr. Galst also testified

that the medical records do not sufficiently show any serious visual impairment as of the most recent ophthalmologic examination in April 2003.  In sum, Dr. Galst believed that Dr. Patels's residual functional assessment of plaintiff was unjustified and inconsistent with the objective documentation of his medical condition. (R. 90)  It was Dr. Galst's belief that during the five-year insured period plaintiff did not meet the criteria for listed disability 9.08A and plaintiff had an RFC of "at least light and probably medium level work." (R. 88)

III.     APPLICABLE LAW

   A.     <u>Disability Determination</u>

         To be classified as disabled and thus entitled to disability benefits, a claimant must prove an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant's impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); <u>Rosa v. Callahan</u>, 168 F. 3d 72, 77 (2d Cir. 1999).  In determining disability, the Commissioner must evaluate the combined effect of a claimant's multiple impairments, regardless of whether a single impairment is severe.  42 U.S.C. § 423(d)(2)(B); <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1031 (2d Cir. 1995).  An impairment may be proven with evidence gathered through medically accepted clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

         The SSA uses a five-step sequential analysis to evaluate disability claims.  <u>See</u> 20 C.F.R. § 404.1520.  The Second Circuit has described the inquiry to be undertaken:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (citation omitted); accord Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002).  The plaintiff bears the burden of proof for the first four steps of the analysis.  If the analysis reaches the fifth step, the burden shifts to the Commissioner. See Shaw, 221 F.3d at 132.  When conducting the analysis, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."  Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

B.    Standard of Review

Under Rule 12(c), Fed. R. Civ. P., a party is entitled to judgment on the pleadings if it establishes that no material facts are in dispute and that it is entitled to judgment as a matter of law.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

The court does not determine whether the claimant is disabled de novo.  Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998).  Instead, if the Commissioner's decision is supported by substantial evidence and free of legal error, the decision must be upheld.  42 U.S.C. § 405(g); Shaw, 221 F.3d at 131.  Resolution of evidentiary conflicts and appraisal of witness credibility,

including the claimant, are judgments reserved for the Commissioner, not this Court.  See Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); accord Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004). This includes inferences and conclusions drawn from evidentiary facts.  Rivas v. Barnhart, 2005 WL 183139, at *18 (S.D.N.Y. Jan. 27, 2005).  The Commissioner's findings of fact are conclusive, 42 U.S.C. § 405(g), and even when substantial evidence to the contrary exists, the Commissioner's determination will not be disturbed.  DeChirico v. Callahan, 134 F.3d 1177, 1182 (2d Cir. 1998).

Legal error includes the misapplication of the five-step sequential analysis or failure to properly apply the "treating physician rule."  See 20 C.F.R. § 404.1520; 404.1527(d)(2).  A treating physician's opinion about the nature and severity of a claimant's impairments will be given controlling weight when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003).  The ALJ may not discredit a treating physician's opinion based solely on a lack of specific clinical findings in the treating physician's report.  Schaal, 134 F.3d at 505; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).  Indeed, the ALJ has a duty to develop the administrative record to ensure that all critical information is presented in the case, even when the claimant is represented by counsel.  Id.  However, the treating physician's opinion is not afforded controlling weight when his opinions are inconsistent with other

substantial evidence in the record, such as the opinions of other medical experts.  Halloran, 362

F.3d at 32.

When the ALJ decides not to give controlling weight to the treating physician's

opinion, he must consider certain factors to determine how to weigh that opinion.  20 C.F.R. §

404.1527(d)(2).  These factors include: (1) the frequency of examination and length, nature, and

extent of the treatment relationship; (2) the evidence in support of the treating physician's

opinion; (3) the opinion's consistency with the entirety of the record; (4) the treating physician's

area of specialty; and (5) other factors the claimant brings to the SSA's attention that tend to

support or contradict the opinion.  20 C.F.R. § 404.1527(d)(2)(i-ii) & (d)(3-6); Halloran, 362

F.3d at 32.  Furthermore, when the ALJ gives the treating physician's opinion less than

controlling weight, he must provide good reasons for doing so.  20 C.F.R. § 404.1527(d)(2).

IV.     DISCUSSION

ALJ Scheer properly applied the five-step analysis laid out in Rosa to evaluate the

plaintiff's claimed disability and determined that plaintiff was not disabled.  First, he found that

plaintiff had not engaged in substantial gainful employment since allegedly becoming disabled.

(R. 23)  Proceeding to the second step, he found that plaintiff suffered from diabetes mellitus and

leg pain, and these impairments were severe as defined in the Act.[8] (R. 24)  ALJ Scheer also

noted that plaintiff had vision problems, but determined that the impairment was non-severe. (R.

24)  At step three, ALJ Scheer concluded that the plaintiff's severe aliments did not "have

clinical or laboratory findings which meet or equal in severity the clinical criteria of any

impairment listed in Appendix 1, Subpart P, Regulations No. 4." (R. 24)

---

[8] A severe impairment is one that significantly limits one's physical or mental ability to do basic work activities.  20
C.F.R. § 404.1520(c); Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other
Symptoms in Determining Whether a Medically Determinable Impairment is Severe, SSR 96-3p (Soc. Sec. Admin.
July 2, 1996).

Between steps three and four, the ALJ must assess the claimant's RFC. See 20 C.F.R. § 404.1520(a)(4).  Step four requires that the ALJ determine whether, based upon the RFC assessment, plaintiff can perform his past work.  ALJ Scheer found that the plaintiff had a RFC for a "wide range of exertionally light work" and thus plaintiff could perform his past relevant work as an office helper, library assistant, or copy machine operator. (R. 29)  In reaching this determination, he considered the clinical and objective medical evidence from several sources, including the testimony of plaintiff and Dr. Galst as well as the evidence from the records of Dr. Patel, Dr. Accardi, Dr. Machac, Dr. Lachman, Dr. Rocker, Clin Path, and the VA Medical Center. (R. 24-29)

In evaluating plaintiff's impairments and limitations, ALJ Scheer considered but ultimately gave little weight to the assessments made by Dr. Patel, plaintiff's treating physician. (R. 29)  He found that Dr. Patel's RFC assessments of the plaintiff were unjustified, inconsistent with medical records, and unsupported by objective findings. (R. 24, 26, 29)  ALJ Scheer gave "considerable weight" to Dr. Galst's opinion, and "significant weight" to the clinical records from Dr. Accardi, Dr. Machac, Dr. Lachman, Dr. Rocker, Clin Path, and the VA Medical Center. (R. 29)

Plaintiff contends that ALJ Scheer's decision not to assign controlling weight to Dr. Patel's opinion was improper under the treating physician rule.  However, ALJ Scheer considered the requisite factors when deciding not to give controlling weight to Dr. Patel's opinions.  ALJ Scheer specifically considered several clinical and laboratory diagnostic findings, such as an arterial Doppler study, ECG's, and RFC assessments of several examining physicians. He also looked at the consistency of the physicians' opinions, finding Dr. Patel's opinion inconsistent with the entirety of the record. (R. 26)  Where appropriate, ALJ Scheer considered

15

the physicians' areas of specialty.  For example, he was able to determine that plaintiff's eye impairment was "non-severe" based on a report by Dr. Accardi, an ophthalmologist. (R. 26-27) While Dr. Patel opined that plaintiff had been disabled since 1990, an opinion on the issue of disability is an administrative finding reserved for the Commissioner.  20 C.F.R. § 404.1527(e)(1).  ALJ Scheer appropriately focused on the medical findings, rather than Dr. Patel's conclusory opinions that plaintiff was disabled or could not work.

Moreover, even had ALJ Scheer given controlling weight to Dr. Patel's RFC assessments, he would not have been required to conclude that plaintiff was disabled during the insured period.  First, Dr. Patel completed two RFC forms, on April 1997 (R. 210) and March 1998 (R. 273), after the insured period (February 2, 1990 to March 31, 1995), and his opinions did not indicate that they were retrospective.  While "[a] treating physician's retrospective medical assessment of a patient may be probative when based up clinically acceptable diagnostic techniques," Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996), Dr. Patel offered no such opinion, and simply asserted that plaintiff was disabled as of the time plaintiff made his application for disability benefits.  Second, Dr. Patel's RFC assessments of plaintiff varied.  In 1998, Dr. Patel stated that, in an eight-hour workday, plaintiff could sit for four hours, stand/walk for three hours, and lift/carry up to ten pounds. (R. 275)  Dr. Patel's earlier RFC assessment, from 1997, indicated that plaintiff could only sit for four hours and walk for one hour in an eight-hour workday. (R. 210)  Third, Dr. Patel reported that plaintiff's diabetes was controlled with insulin and that he saw plaintiff about once every four weeks. (R. 161)  Finally, Dr. Patel's most optimistic RFC assessment, (R. 275) meets the regulations' description of sedentary work.[9]  ALJ Scheer described plaintiff's past employment as an office helper as skilled, sedentary work.

---

[9] Sedentary work is defined in 20 C.F.R. § 404.1567(a) as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."

Therefore, even if Dr. Patel's RFC assessments were given controlling weight, step four of the

five-step analysis could have resulted in a finding that plaintiff could perform his past relevant

work and was not disabled.  ALJ Scheer properly applied the treating physician rule.  Further, his

conclusion is supported by substantial evidence as the record here is replete with medical reports,

test results, and physicians' opinions.  I cannot conclude that his determination not to give

controlling weight to Dr. Patel's opinion was unreasonable or arbitrary.

   In reaching the determination that plaintiff is not disabled under the Act, ALJ

Scheer considered not just the medical evidence in the record but also plaintiff's testimony

regarding his disabling conditions which the ALJ found was "generally credible, but [did] not

rise to a level of disability." (R. 30)  Plaintiff argues that the ALJ "erred in rejecting the

credibility of [plaintiff's] subjective complaints."  (Pl.'s Mem. at 18)  However, this argument is

misplaced, as ALJ Scheer found that while plaintiff's testimony was credible, his symptoms did

not rise to a level of disability. (R. 30)

   In determining whether plaintiff was disabled, ALJ Scheer found it significant

that despite plaintiff's impairments, he "was able to take care of his activities of daily living,"

"help his wife with household chores," and "take public transportation by himself." (R. 28-29)

ALJ Scheer also found that plaintiff exacerbated his conditions by noncompliance with his care

"by not going to the doctor regularly, [not] taking his medication and smoking cigarettes." (R.

29)  Plaintiff also argues that ALJ Scheer inappropriately considered plaintiff's ability to take

public transportation and the Second Circuit has stated that "[w]hen a disabled person gamely

chooses to endure pain in order to pursue important goals, it would be a shame to hold this

endurance against him in determining benefits unless his conduct truly showed that he is capable

of working."  Nelson v. Bowen, 882 F.2d 45, 49 (2d Cir. 1989); see also Downey v. Barnhart,

294 F.Supp. 2d 495, 502 (S.D.N.Y. 2003) (finding that a claimant's ability to raise his son and attend social security hearings using public transportation were insufficient to support the ALJ's determination that claimant was not credible).  Here, however, plaintiff's ability to take public transportation was just one of several factors the ALJ used to assess plaintiff's disability claim.  Further, there is objective medical evidence of plaintiff's condition, and ALJ Scheer found that such evidence supported a finding that plaintiff had an RFC for light work. (R. 29)

Plaintiff also contends that the ALJ improperly considered plaintiff's purported noncompliance with medical care and his smoking, which were found to "exacerbat[e] his conditions," and argues that he was, in fact, compliant with physicians' directions.  Plaintiff smoked since about 1970 (R. 163) and he testified that he smoked one pack of cigarettes every two days (R. 46).  Additionally, plaintiff's physicians repeatedly counseled him about the benefits of smoking cessation (R. 289, 413, 414).  There is also evidence in the record that plaintiff was noncompliant with his care during and after the insured period.  Plaintiff testified that during the five-year insured period, he "would get dizzy at times from . . . not properly taking care of the diabetes . . . meaning taking the [insulin] on time." (R. 77)  Notes about plaintiff's care from the VA Medical Center in November 2003 indicated that plaintiff was not taking most of his medications when he was last seen and that he had not followed up in more than a year because he was embarrassed after missing previous appointments. (R. 411) Plaintiff did testify that he saw a physician approximately once a month from about 1989 or 1990, and Dr. Patel stated that, as of 1994, he saw plaintiff at the same frequency which is some evidence that plaintiff sought medical care to control his diabetes. (R. 42, 161)  However, "a remediable impairment is not disabling," Mongeur, 722 F.2d at 1039, and there is substantial evidence in the record to support the ALJ conclusions as to plaintiff's credibility and lack of disability.

ALJ Scheer did not undertake the fifth step of the analysis because he determined that plaintiff had an RFC for light work for the five-year insured period and could perform his past relevant work as an office helper, library assistant, and copy machine operator. (R. 31)  The ALJ therefore found that plaintiff was not disabled at any time since February 2, 1990 and denied plaintiff's claim for disability insurance benefits. (R. 31)

V.    CONCLUSION

I conclude that the ALJ properly found that plaintiff was not disabled, as defined by 42 U.S.C. § 423(d)(1)(A), during the relevant period.  The ALJ's finding was supported by substantial evidence and free from legal error.  Defendant's motion for judgment on the pleadings in GRANTED.  Plaintiff's motion for judgment on the pleadings is DENIED.  The Clerk is directed to enter judgment for the defendant.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
September 11, 2007